# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UWM STUDENT ASSOCIATION, LENA-ROSE
M. ABU SAIF, ANDRES GABRIEL AGUILAR,
ALLA R. AHMAD, JAMEELA AL-ASMAR,
EMMA BORKOWSKI, PHILLIP A. COCHRAN,
GONZALO COUTO-LAIN, KEITH CRUM,
PAUL GARNI, USMAN GHAFFAR, REBECCA
L. HADRIAN, FLAUNTAJIA HARRIS,
BRITTNEY HENRY, LAWRENCE W. IVORY,
JR., SAMUEL A. JADIN, CASANDRA
JOHNSON, NORIELLE T. JOHNSON, KAYLA
BRIANNE KAPLAN, THOMAS KELLY, HEIDI
W. LAGERMAN, DANIEL S. LAUGHLAND,
KARINA D. LEMPERT, REBECCA LILLIE,
BRENT LINDQUIST, MICHAEL LUDWIG,
JONNELLI N. NAVES-GONZALEZ, DHARA
PAREKH, ALEX PARTEE, SHREYA PATNAIK,
SYED A. QADIR, VINCE CASIMIR ROLBIECKI,
LEYTON SCHIEBEL, ALIZAR S. B. SALEEM,
TREVOR THOMAS SCHERMERHORN,          Case No. 15-CV-1-JPS
WILLIAM J. SCHMIDT, TAYLOR Q. SCOTT,
AHMED SHEHADEH, MOHAMMAD SAMIR
SIDDIQUE, RYAN THOMAS STETZ, ANDREW
CARLYLE URBAN, KIARA A. WILSON,
KORINA YEE, and ALAN D. EISENBERG,

                    Plaintiffs,

v.

DR. MICHAEL LOVELL, BOARD OF REGENTS
OF THE UNIVERSITY OF WISCONSIN
SYSTEM, STUDENT ASSOCIATION AT UWM,
DR. MICHAEL LALIBERTE, DAVID
STOCKTON, RICHARD R. THOMAS, THOMAS
G. MCGINNITY, HEATHER HARBACH,
PAHOUA XIONG, ANTHONY M. DEWEES,
CARLA GREVE, RYAN SORENSON,
NIKOLAUS P. RETTINGER, III, MARK A.
MONE, EDWARD C. MELCHIOR, NICOLE
HEINEN, CAMILLE RIDGEWAY, ROBIN JENS,
JOHN BEHLING, MARK BRADLEY, JOSE
DELGADO, TONY EVERS, MICHAEL FALBO,
MARGARET FARROW, EVE HALL, NICOLAS
HARSY, TIM HIGGINS, EDMUND

MANYDEEDS, REGINA MILLNER, JANICE
MUELLER, DREW PETERSON, CHARLES
PRUITT, ANICKA PURATH, JOSE VASQUEZ,
DAVID WALSH, GERALD WHITBURN, and
UW-MILWAUKEE PUBLIC RECORDS
CUSTODIAN,

**ORDER**

Defendants.

In this action, Plaintiffs, who are or were students at the University of Wisconsin-Milwaukee ("UWM"), assert numerous causes of action relating at their core to an alleged conspiracy by UWM administrators to denigrate the rights and powers of the student government. Defendants have moved to dismiss the complaint, and for the reasons stated below, their motion will be granted.

Before proceeding to the analysis of Defendants' motion to dismiss, the Court notes that the instant motion was filed on December 21, 2015, and was fully briefed as of February 23, 2016, not counting other supplemental filings Defendants and Plaintiffs have made throughout the pendency of the motion. As of April 17, 2017, the date this matter was reassigned to this branch of the Court, the motion had not been decided. Such delay is inexplicable and thus unwarranted. It works to the detriment of the Court, the parties, and the instructions of Congress in Federal Rule of Civil Procedure 1 that the courts of the United States must endeavor to secure the "just, speedy, and inexpensive determination" of every action. Fed. R. Civ. P. 1. The Court now makes good on that obligation by issuing this long-overdue ruling.

## 1.    BACKGROUND

The following facts are drawn from the allegations in the Third Amended Complaint. Because of the prodigious length of that document,

and because the Court's disposition of the matter does not turn on its minutiae, the Court will give a high-level summary of the allegations and legal claims.

All Plaintiffs were, at the time of the relevant events, students at UWM. At UWM, there previously existed a student government body known as the Student Association ("SA"), which was organized pursuant to Wis. Stat. § 36.09(5).[1] The events of this case arise primarily from a break in that body in 2013, wherein Plaintiffs' group, UWM Student Association ("PSA"), and another group, Student Association at UWM ("DSA"), claimed to represent the continuation of the original SA. Defendants are mostly UWM employees, including the chancellor, vice chancellor, records custodians, members of the Board of Regents, and others, who allegedly worked to undermine the PSA and empower their preferred group, the DSA.

---

[1]This subsection of the statute reads in full:

> The students of each institution or campus subject to the responsibilities and powers of the board, the president, the chancellor, and the faculty shall have primary responsibility for advising the chancellor regarding the formulation and review of policies concerning student life, services, and interests. Students in consultation with the chancellor and subject to the final confirmation of the board shall have the responsibility for the disposition of those student fees which constitute substantial support for campus student activities. The students of each institution or campus shall have the right to organize themselves in a manner they determine and to select their representatives to participate in institutional governance.

Wis. Stat. § 36.09(5). The other subsections of this provision define the powers of the UW Board of Regents, the president, chancellors, faculty, and staff. *See id*. § 36.09(1)–(4m).

The third amended complaint sets forth seven causes of action, each relating to separate episodes in what Plaintiffs see as an overarching conspiracy to deprive them of their right to organize as students. First, Plaintiff Daniel Laughland ("Laughland") won the 2012 election for SA president. During the campaign Laughland made statements critical of the UWM administration. After his victory, UWM vice chancellor, Defendant Dr. Michael Laliberte ("Laliberte") told Laughland he would not be allowed to serve as president. Laughland, in apprehension of Laliberte's power to deny him payment for the position and in the belief that Laliberte had the support of chancellor Dr. Michael Lovell ("Lovell"), resigned from the position. Laughland raises a claim of retaliation for his exercise of free speech, in violation of the First Amendment, and deprivation of due process of law, in violation of the Fourteenth Amendment.

A similar episode undergirds Plaintiffs' second cause of action. Nathan Uibel ("Uibel") was elected SA president in April 2013. Plaintiff Vince Rolbiecki ("Rolbiecki") was to serve as his vice president, and Plaintiffs Mohammad Siddique ("Siddique") and Taylor Scott ("Scott") had "binding agreements" with Uibel providing that they would be appointed to paid executive positions in SA. All three made statements critical of the administration during the campaign. On May 3, 2013, Lovell issued a letter indicating that he would not recognize the results of the 2013 SA elections. Laliberte supported Lovell's plan by organizing an "outside review" of the elections, which turned out to be negative, in order to provide pretext to question the elections. Others participated in Lovell's plan to reject the 2013 SA elections as well. An interim "Board of Trustees" of the DSA (the "Board of Trustees") was formed to exercise the powers of the prior SA. Like Laughland in 2012, here these three Plaintiffs claim that they were denied

the benefits of their positions in the SA in retaliation for their speech and without due process.

The third cause of action appears to be a continuation of the second. In June 2013, Siddique applied for a position on the Board of Trustees that purported to act in the SA's stead. His application was denied by Defendant David Stockton ("Stockton"), Student Government Relations Coordinator and Director of the Student Association Professional Staff Office of UWM, in retaliation for his speech in favor of expanding student rights. Scott would have applied to a Board position, too, but after Siddique was rejected, he thought it would be futile to apply. Both applicants were allegedly "among the most qualified" based on their prior SA service. Additionally, almost a year later a UWM official sent an email to student union staff disparaging the "old SA," which Plaintiffs say was directed at them specifically. Siddique and Scott assert that these actions were contrary to their due process and free speech rights.

In the fourth cause of action, Plaintiffs turn to Plaintiff Gonzalo Couto-Lain ("Couto-Lain"), who was elected chair of the Board of Trustees in June 2013. Stockton apparently obstructed Couto-Lain's duties by refusing to provide information he was duty-bound to provide, such as former SA governing documents. This appears to have been done in retaliation for Couto-Lain's suggestion that the Board of Trustees should have independent counsel and that the student government should advocate for students in conflicts with the administration or faculty. In September 2013, Stockton, under threat of withholding payment for Board positions and with the support of Lovell and Laliberte, coerced the other Board members to call for Couto-Lain's resignation. Couto-Lain resigned,

and complains that he suffered retaliation for his speech and deprivation of due process.

The fifth cause of action concerns allegations that UWM officials wrongfully investigated and sanctioned students, including Scott and Siddique, for fabricated instances of nonacademic misconduct. These trumped-up charges were allegedly made in response to the students' critiques of administration policy. It appears that some or all of these misconduct charges were related to Scott and Siddique's efforts to run the PSA as their own alternative to the SA, in defiance of the DSA's takeover of that role. In particular, Siddique was sanctioned for representing that he was a part of the PSA and that the PSA was the legitimate successor to the SA. He was sanctioned by being forced to issue a statement repudiating this belief, a sanction that was upheld on appeal to the chancellor and then to the UW Board of Regents. Scott was threatened with similar sanctions in 2014 unless he declined to re-enroll as a student. Scott and Siddique contend that the disciplinary proceedings and sanctions ultimately imposed were undertaken in retaliation for their speech and did not comport with due process as provided by either the Fourteenth Amendment or the Wisconsin administrative code.

Next is the sixth cause of action, which, for reasons explained further below, is the centerpiece of this lawsuit and the foundation on which all other claims rest. In this count, Plaintiffs allege that from at least April 2012 onward, all Defendants "have collectively and individually engaged in a course of conduct of interfering with the rights of UWM students to organize themselves into a student government and advocate for student interests." (Docket #22 ¶ 93). Examples of such conduct include those alleged in the other six causes of action. According to Plaintiffs, these

actions constituted an intentional violation of their rights as students under Wis. Stat. § 36.09(5) and a breach of the duty of fair representation owed to them by the DSA, among other things. Plaintiffs seek only declaratory and injunctive relief against Defendants in this cause of action.

Also notable is that this count provides some additional details beyond those contained in the other counts. For instance, here Plaintiffs allege that Defendants like Laliberte, Lovell, and Stockton held meetings—sometimes behind closed doors—discussing how to manipulate the student government to support their interests and reject candidates for student government with positions contrary to their own. Further, by rejecting the 2013 SA elections, Defendants nullified several purportedly important pieces of student legislation that the rejected government had enacted. Additionally, Defendants exercised control over the Board of Trustees in order to force them to limit the power of student government at UWM. Moreover, Plaintiffs claim that Defendants interfered in the 2014 DSA elections, organized by the Board of Trustees, in order to promote the candidates of their liking. Finally, as suggested above, Defendants opposed the organization of the PSA at every turn.

In the final cause of action, Plaintiffs allege that the UWM records custodian, Laliberte, Stockton, and the UW Board of Regents wrongfully denied them records requested pursuant to the Wisconsin Public Records Law, Wis. Stat. § 19.3119.19, without giving a reason for the denial or notice of their ability to seek judicial review. The count also includes allegations that Siddique requested, without citation to statute, that he be provided

records of the disciplinary proceedings against him. The records requests were either denied or received an inadequate response.[2]

## 2.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of complaints which fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a viable claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted).

In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable

---

[2]In closing, the Court notes that Plaintiffs seem to suggest that theirs is a class action. Plaintiffs claim to represent "a class of thousands of former and current UWM students who were commonly aggrieved by the denial of their right to organize their student government without interference from the UWM Administration, and who are well represented by the named plaintiffs." (Docket #22 ¶ 8). This is the only class-related allegation in the 47-page complaint. This incredibly conclusory allegation falls well short of pleading a viable class claim. For instance, Plaintiffs do not allege that joinder of each class member is impracticable or that the named plaintiffs have claims typical of those of the prospective class members. *See* Fed. R. Civ. P. 23(a). Nor do Plaintiffs identify which type of class action they intend to pursue under Rule 23(b). *See id.* 23(b). Without deciding that such basic information is always required, the Court finds that Plaintiffs' one-sentence class allegation deprives Defendants of fair notice of the claim and prevents the Court from concluding that Plaintiffs' right to class-based relief is plausible, rather than merely speculative. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Fin. Servs., Inc.*, 536 F.3d 663, 667 (7th Cir. 2008); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

inferences in favor of the plaintiff." *Id.* at 480–81. However, a complaint that offers "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The Court must identify allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.

3.    **DISCUSSION**

Plaintiffs' third amended complaint, like its predecessors, is rife with infirmities. The Court will discuss only those necessary to dispose of the complaint, and with it, the case as a whole.

3.1    **Previously Dismissed Defendants**

First, Plaintiffs have inappropriately joined certain Defendants in the third amended complaint whom the Court has already dismissed for failure to timely make service. *See* (Docket #13 at 3). This action was filed on May 31, 2014, in Milwaukee County Circuit Court. Wisconsin state law required that Defendants be served within ninety days of that date. Wis. Stat. § 801.02. No court can order that period of time enlarged. *Id.* § 801.15(2)(a). Plaintiffs failed to make service under Wisconsin law within that period as to Defendants Lovell, the UW Board of Regents, Heather Harbach, Pahoua Xiong, Amy Watson, Suzanne Weslow, Anthony DeWees, Carla Greve, Angela Lang, Dakota Hall, and Nikolaus P. Rettinger III. (Docket #13 at 2–3).

Four months later, the existing Defendants removed this action to this Court. Once the action was removed, Plaintiffs lost the ability to bring the unserved Defendants into this case. Failure to effect service on a defendant means that the Court lacks personal jurisdiction over that person. "Federal courts acquire personal jurisdiction only to the extent the

state law authorizes service of process." *United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 536 (7th Cir. 1991); *see also Allen v. Ferguson*, 791 F.2d 611, 616 n.8 (7th Cir. 1986). In *American Family Mutual Insurance Company v. Royal Insurance Company of America*, 481 N.W.2d 629, 633 (Wis. 1992), the Wisconsin Supreme Court held that a plaintiff's failure to comply with the service deadline "constitutes a fundamental error which necessarily precludes personal jurisdiction regardless of the presence or absence of prejudice." Thus, at the time of removal, the Wisconsin court had no personal jurisdiction over these Defendants, and this Court acquired none. *See* Wis. Stat. § 801.15(2)(a); *Scovel v. Habeck*, 100 F.R.D. 81, 82 (E.D. Wis. 1986). Without personal jurisdiction over the unserved Defendants, the Court has no power to act with respect to them in the context of the present action.

Further, Plaintiffs' assertion that service can still be made is without merit even if the Court accepts that they may re-attempt service under 28 U.S.C. § 1448. That statute provides that in cases removed to federal court before service as to all the defendants, such service "may be completed or new process issued in the same manner as in cases originally filed in such district court." 28 U.S.C. § 1448. Although the matter has not been decided by our Court of Appeals, the Fourth and Eighth Circuits found that in cases where the time for service under state-court rules has expired, the plaintiff should nevertheless be permitted to make service under a new period as provided in Rule 4(m), so long as the statute of limitations had not also expired prior to removal. *Rice v. Alpha Sec., Inc.*, 556 F. App'x 257, 260–61 (4th Cir. 2014); *Barner v. Thompson/Center Arms Co. Inc.*, 796 F.3d 897, 902 (8th Cir. 2015).

In this case, assuming Plaintiffs obtained a second chance to serve the unserved Defendants upon removal, they still failed to do so within the time provided under the Federal Rules. Such service should have been made no later than May 2, 2015. Prior to responding to this third motion to dismiss in this Court, Plaintiffs never filed affidavits proving that service occurred before that date. Now, in their response to the instant motion, filed over a year after the case was removed, they submit several dubious-looking affidavits of service as to some—though not all—of the unserved Defendants. *See* (Docket #29). Two such affidavits, each dated January 11, 2016, purport to show that service on Lovell occurred on June 19, 2014, and service on Sorenson occurred on August 5, 2014. (Docket #29-1, #29-3). Another, dated July 21, 2014, states that service on the UW Board of Regents occurred on July 17, 2014. (Docket #29-2).

These affidavits do nothing to help Plaintiffs here. First, only one of them is dated anywhere remotely close in time to the date of purported service. The other two are of questionable value given that the affiant is testifying to service allegedly made nearly two years prior. *Relational, LLC v. Hodges*, 627 F.3d 668, 673 (7th Cir. 2010) (presumption of proper service evidenced by affidavit of service can be rebutted by "strong and convincing evidence" that service was not made). Second, these affidavits were not presented to the Court at the opportune moment—that is, prior to the dismissal of these and the other unserved Defendants on September 30, 2015 for failure to perfect service. (Docket #13 at 3). Throwing a few affidavits at the problem years later does not cure that failure. The proper procedure would have been to seek reconsideration of the decision and submit the evidence previously omitted in response to the first motion to dismiss in this Court. *See* Fed. R. Civ. P. 60(b). As a result, even a fresh start

at service provided by Section 1448 cannot resurrect the unserved Defendants.

Moreover, Plaintiffs' reliance on Federal Rule of Civil Procedure 6(b) to extend the time for service is misplaced. That Rule permits the Court to extend a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). First, it is probably the wrong rule for this situation, since Rule 4(m) itself provides that extensions of time to make service must be granted on a showing of good cause for the failure to timely serve. *Id.* 4(m); *In re Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996) (explaining differences between "good cause" and "excusable neglect" standards). Second, whether the Court considers "excusable neglect" or "good cause" to be the appropriate standard, it is Wisconsin's law of service that controls in this removed action, and the Court cannot retroactively extend the service deadline that Plaintiffs missed. Third, assuming that cases like *Rice* and *Barner* are correct, and that Plaintiffs were permitted another period for service after removal, Plaintiffs have not shown anything approaching excusable neglect or good cause in this case. They simply failed to make service, first under Wisconsin law, and then under the Federal Rules, and they offer no colorable reason why their failure is excusable. Indeed, it is incredible that Plaintiffs waited over a year, and after these Defendants had already been dismissed, at that, to even try to show that they had made service, although still as to fewer than all the relevant Defendants. As such, Rule 6(b) affords them no relief. *See Cardenas v. City of Chicago*, 646 F.3d 1001, 1007 (7th Cir. 2011) (finding no good cause to extend time for service where the plaintiffs never requested an extension of time to serve nor diligently pursued service during the allotted period).

Finally, Plaintiffs posit that filing an amended complaint restarts the Rule 4(m) service clock. It does not. *Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006); *Del Raine v. Carlson*, 826 F.2d 698, 705 (7th Cir. 1987); *Bryant v. Brooklyn Barbeque Corp.*, 130 F.R.D. 665, 668–69 (W.D. Mo. 1990), *aff'd*, 932 F.2d 697 (8th Cir.), *cert. denied*, 502 U.S. 1005 (1991); 4B Fed. Prac. & Proc. Civ. § 1137 (4th ed. 2017) (filing an amended complaint does not provide a renewed period for service except at to defendants named for the first time in the amended complaint). As the Seventh Circuit explained in *Del Raine*, "[t]he purpose of allowing complaints to be amended is to enable the pleadings to be conformed to the developing evidence rather than to extend the time for service indefinitely." *Del Raine*, 826 F.3d at 705. Moreover, the court in *Bryant* observed that refusing to restart the service period because of amended complaints "comports with common sense: if a plaintiff who had not shown good cause for failing to serve a complaint with the prescribed period was allowed to file an amended complaint after that time period had passed, there would be no incentive to serve the complaint in a timely manner and the purpose of Fed. R. Civ. P. 4[(m)], to encourage prompt service, would be emasculated." *Bryant*, 130 F.R.D. at 669. Thus, Plaintiffs' amended complaints had no effect on the time period in which they had to make service. As a result, the unserved Defendants who were dismissed by the Court in its September 30, 2015 order, (Docket #13 at 3), must and shall remain dismissed.

### 3.2 The Sixth Cause of Action

The parties dispute the merits of Plaintiffs' sixth cause of action, which alleges a university-wide conspiracy to interfere in student government. In this count, Plaintiffs seek declaratory and injunctive relief which would invalidate many of the challenged actions taken by

Defendants, including, for instance, their decision not to recognize the results of the 2013 student government election and to raise the DSA in place of the PSA. The Court need not wade into the merits of the claim, however, because it is barred by principles of state sovereign immunity.

The Eleventh Amendment immunizes nonconsenting states, state agencies, and state officials sued in their official capacity, from suit in federal court. *Benning v. Bd. of Regents of Regency Univ.*, 928 F.2d 775, 777 (7th Cir. 1991); *MCI Telecomms. Corp. v. Ill. Bell Tel. Corp.*, 222 F.3d 323, 336–37 (7th Cir. 2000).[3] Yet a state's voluntary invocation of a federal court's jurisdiction through removal waives "the State's otherwise valid objection to litigation of a matter. . .in a federal forum"—in other words, its Eleventh Amendment immunity. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623 (2002); *Beaulieu v. Vermont*, 807 F.3d 478, 488 (2d Cir. 2015). This rule prevents the unfair circumstance in which a state removes a case, thereby invoking a federal court's jurisdiction, and then claims that the

---

[3] Although it is not entirely clear from their allegations, the Court notes that Plaintiffs must have brought this count against the individual Defendants only in their official, not individual, capacities. Injunctive relief is not available against a state official sued in his individual capacity. *See Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005); *Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002); *Luder v. Endicott*, 253 F.3d 1020, 1022–23 (7th Cir. 2001); *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991) ("[I]njunctive relief against a state official may be recovered only in an official capacity suit[.]"). Moreover, as a matter of common sense, the relief Plaintiffs seek in this count—including undoing many of the administration's actions with respect to PSA and DSA—could only be effected by reason of Defendants' respective positions of authority at UWM. *See* (Docket #22 ¶ 39); *Dertz v. City of Chicago*, 912 F. Supp. 319, 327–28 (N.D. Ill. 1995) (equitable relief barring enforcement of employer's discharge policy could only be sought against individual defendants in their official capacities since such relief "can be obtained only from the defendants in their official capacities, not as private individuals") (citing *Feit v. Ward*, 886 F.2d 848, 857 (7th Cir. 1988)).

Eleventh Amendment bars the federal court from hearing the dispute. *Beaulieu*, 807 F.3d at 485–86. Thus, by removing this action, Defendants have forfeited the protections afforded by that Amendment. *See Murphy v. Smith*, 844 F.3d 653, 657 (7th Cir. 2016) (citing *Lapides* for the proposition that a "state's voluntary removal to federal court waived Eleventh Amendment immunity"); *Nuñez v. Ind. Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016) (same).[4]

Removal does not, however, deprive the state of whatever sovereign immunity it might have enjoyed in state court. *See Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003); *Tyler v. Wick*, No. 16-3792, 2017 WL 951593, at *2 (7th Cir. Mar. 8, 2017). When considering state sovereign immunity, as opposed to Eleventh Amendment immunity, *Lapides*' concern for fairness disappears. Because a state can raise its immunity in state court, it does not, through removal, lose that defense. *See Beaulieu*, 807 F.3d at 486–88. Accordingly, Defendants may assert the sovereign immunity they brought with them to this Court. *Omosegbon*, 335 F.3d at 673; *Benning*, 928 F.2d at 777–79 (under *Erie*, state rules of immunity are binding in federal court with respect to state causes of action); *Stewart v. N. Carolina*, 393 F.3d 484, 490 (4th Cir. 2005).[5]

---

[4]This waiver means that the Court need not consider Defendants' invocation of *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984), which holds that the Eleventh Amendment bars a federal court from commanding state officials to comply with state law. *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003).

[5]The Seventh Circuit's decision in *Board of Regents of the University of Wisconsin System v. Phoenix International Software, Inc.*, 653 F.3d 448 (7th Cir. 2011), is not to the contrary. There, the Seventh Circuit found that under *Lapides*, the "general rule" is that removal waives a defendant's immunity from suit in federal court. *Id.* at 461. The Court of Appeals was faced with a case instituted by a state

Wisconsin's immunity rules are broad. The State—and its agencies and officials, when sued in their official capacities—may not be sued without its consent in Wisconsin courts. *Lister v. Bd. of Regents of Univ. of Wis. Sys.*, 240 N.W.2d 610, 617 (Wis. 1976); *Hoeft v. City of Beaver Dam*, 868 N.W.2d 199, at *7 (Wis. Ct. App. 2015); *Weis v. Bd. of Regents of Univ. of Wis. Sys.*, 837 F. Supp. 2d 971, 976–77 (E.D. Wis. 2011); Wis. const. art. IV, sec. 27. This immunity acts to deprive the court of personal jurisdiction over applicable defendants. *Brown v. State*, 602 N.W.2d 79, 84 (Wis. Ct. App. 1999). Wisconsin has only waived this immunity with respect to a narrow class of claims in which it is a debtor (and after a notice of claim procedure has been followed), but not generally with respect to contract or tort actions. Wis. Stat. § 775.01; *Trempealeau County v. State*, 51 N.W.2d 499, 501 (Wis. 1952); *State v. P.G. Miron Constr. Co.*, 512 N.W.2d 499, 503 (Wis. 1994). Because this immunity is procedural in nature and deprives the court of personal jurisdiction over the state, it generally bars both monetary and equitable relief. *Erickson Oil Prods., Inc. v. State*, 516 N.W.2d 755, 757 (Wis. Ct. App. 1994); *P.G. Miron*, 512 N.W.2d at 503 (holding that immunity bars any "suit" against the state, encompassing "any proceeding" in a court of "for the redress of an injury or the enforcement of a right, whether at law or equity").

In this case, there is no question that the sixth cause of action would be barred by the State's immunity. Plaintiffs cite no statute or other

---

in federal court to appeal a ruling of the Trademark Trial and Appeal Board. *Id.* at 457. By contrast, here Defendants merely removed an action brought against them in state court, ostensibly to achieve their desired forum. The Seventh Circuit has indicated that in a case like this one, the state retains the sovereign immunity it could have claimed in state court, notwithstanding the pronouncements in *Phoenix. See Hester v. Ind. State Dep't of Health*, 726 F.3d 942, 950 (7th Cir. 2013).

authority effecting a waiver of immunity for the claims they raise therein. Instead, the only argument Plaintiffs raise is with respect to DSA, which they claim is not entitled to immunity because it is not an agency of the State. (Docket #29 at 17).[6]

Sovereign immunity does not apply to the activities of "a state-created agency with independent proprietary powers and functions," *German v. Wis. Dep't of Transp., Div. of State Patrol*, 612 N.W.2d 50, 55 (Wis. 2000), or what *Lister* called an "independent going concern," *Lister*, 240 N.W.2d at 618. This exception is narrow; only three Wisconsin entities—the State Armory Board, the State Housing Finance Authority, and the State Investment Board—have been found to be independent going concerns. *Mayhugh v. State*, 867 N.W.2d 754, 758 (Wis. 2015). The totality of the circumstances informs this analysis, but courts often consider "the character and breadth of the statutory powers granted to the entity," including whether (1) it is authorized to sue and be sued; (2) it was created as a body corporate or politic; (3) it has powers indicating budgetary autonomy; and (4) it can hold and convey real estate. *Id.* at 759–60.

Here, DSA does not enjoy sufficient independence or statutory power to qualify as an independent going concern. In *Kaye v. Board of Regents*, 463 N.W.2d 398, 401 (Wis. Ct. App. 1990), the Wisconsin Court of Appeals held that an unincorporated student association that "is an 'active

---

[6]Defendants appear to assert sovereign immunity only as to the UW Board of Regents and DSA, *see* (Docket #24 at 17–18), but because the sixth cause of action is maintained against the individual Defendants in their official capacities, *see supra* note 3, the result reached herein is no different for them. *Hoeft*, 868 N.W.2d 199, at *7 ("'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.'") (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

participant[] in the immediate governance of and policy development' of the University of Wisconsin-Milwaukee" was a state agency and, as a result, it could not hire legal counsel without the governor's approval. *Id.* The group in question was a board of the student union, which the court found was "an integral part of the principal administrative unit—the University of Wisconsin System—under the authority of the Board of Regents." *Id.* at 4.

Though *Kaye* did not apply sovereign immunity principles, its observation about the subordinate status of student government organizations in the UWM hierarchy is directly analogous here. *Kaye* confirms that the DSA, as a student government organization, lacks much in the way of independent legal status. Whatever protections Section 39.06(5) extends over the rights of students to organize and represent their interests, *see Student Ass'n of Univ. of Wisconsin-Milwaukee v. Baum*, 246 N.W.2d 283, 295–96 (Wis. 1976), it does not follow that student government organizations are separate from the State in the sense required to avoid immunity.

As to DSA's financial autonomy, the structure of Section 36.09 demonstrates that although student organizations enjoy some rights of self-determination, they are nevertheless subsidiary in the UWM organizational structure and, tellingly, may only expend student fees "in consultation with the chancellor and subject to the final confirmation of the board." Wis. Stat. § 39.06(5). DSA's financial powers are heavily circumscribed, with most of its authority being tied to its governmental, not financial, independence. Without doubt, DSA's financial powers fall far short of those found adequate to constitute an independent going concern. *See Sullivan v. Bd. of Regents*, 244 N.W. 563, 564 (Wis. 1932) (holding that Wisconsin Board of

Regents of Normal Schools, which had little ability to acquire or spend money without State approval, was not an independent going concern). As such, DSA is rightly considered part of the State for purposes of sovereign immunity. For these reasons, the Court concludes that Plaintiffs' sixth cause of action is barred by the State's invocation of sovereign immunity.

One wrinkle remains. Under Wisconsin law, immunity does not attach where the complaint seeks prospective declaratory or injunctive relief. *Lister*, 240 N.W.2d at 622–23; *PRN Assoc. LLC v. State, Dep't of Admin.*, 754 N.W.2d 254, at *1 (Wis. Ct. App. 2008). In *Lister*, the Wisconsin Supreme Court explained that a declaratory judgment "is particularly well-suited (in cases where such relief is otherwise appropriate) for resolving controversies as to the constitutionality or proper construction and application of statutory provisions," since misapplication of a statute suggests that the state official acted outside his jurisdictional authority rather than merely abused his discretion. *Lister*, 240 N.W.2d at 624. The phrase "otherwise appropriate" is the operative consideration here, as it was in *Lister* itself. The court there emphasized that declaratory relief is "primarily anticipatory or preventative in nature," and therefore claims for such relief should "be brought before the courts for settlement and determination prior to the time that a wrong has been threatened or committed." *Id.* at 624–25. The purpose of this ripeness requirement is "to insure that a bona fide controversy exists and that the court, in resolving the questions raised, will not be acting in a merely advisory capacity." *Id.* at 624. Though *Lister* concerned primarily a request for a declaration of rights, its reasoning applies equally to requests for injunctive relief, which can skirt the state's immunity only when they are sought prospectively to enjoin an act in

excess of the state official's authority. *PRN Assoc. LLC v. State Dep't of Admin.*, 766 N.W.2d 559, 572 (Wis. 2009).

If a request for equitable relief comes long after the alleged wrong occurred, a court can look past its invocation and ask whether the relief sought is in reality simply a precursor to a request for damages. *Lister*, 240 N.W.2d at 625. As the *Lister* court noted, "[a] court cannot close its eyes to the purpose which a declaration of rights will serve in the particular case. It is not a sufficient ground for declaratory relief that the parties have a difference of opinion as to the proper construction and application of a particular statute." *Id.* In that case, the plaintiffs sought a declaration that they should have been classified as residents and, as a result, should not have been charged non-resident university tuition. *Id.* The court concluded that

> [n]o anticipatory or preventative relief is sought in this action. To the extent that the complaint attempts to state a claim to relief under state law, the only consequence which the desired declaration of rights could have would be to settle the plaintiffs' rights to recover the amounts paid in nonresident tuition. The action is, in effect, one for damages. While there may be occasions when a declaration of rights may be appropriate in aid of a future action for damages, this is not such a case.

*Id.*; *Brown*, 602 N.W.2d at 92 (dismissing declaratory judgment claim against the State regarding alleged misrepresentations on a lottery ticket where there was no apparent purpose for the plaintiff's claim other than to establish the State's liability for damages).

Here, Plaintiffs' requests for declaratory and injunctive relief do not meet the exception to immunity announced in *Lister*. First, it is worth noting that Plaintiffs' argument on the point consists of a single quotation direct

from *Lister*. *See* (Docket #29 at 18). The Court is not the in the business of extrapolating complex analyses from such perfunctory submissions. *See Anderson v. Hardman*, 241 F.3d 544, 545–46 (7th Cir. 2001); *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1335 (7th Cir. 1995). Thus, as an initial matter, the Court finds that Plaintiffs have waived reliance on this argument. *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008) (finding waived a "one-sentence" and "conclusory" argument); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).").

In any event, the argument is without merit. Plaintiffs seek numerous individual declarations and injunctions, but they in essence want a declaration that all of the conduct alleged in the other seven counts of the complaint was unlawful, that DSA's levy of student fees were and are unlawful, that the Board of Trustees' actions in the PSA-DSA interim were unlawful, an injunction against recognizing those actions and the later actions of the DSA, an injunction reinstating PSA's legislative enactments, and an injunction forcing the school to recognize PSA as the operative student government organization. *See* (Docket #22 at 39).

Each of the challenged actions in this case occurred years ago as of the issuance of this Order, and even when the case was filed in state court in May 2014, the relevant school year was over or nearly over. Equitable relief may have been appropriate to forestall these actions, but it cannot be used *post hoc* as an end-run around sovereign immunity. *See PRN Assoc.*, 766 N.W.2d at 574 (rejecting declaratory judgment claim where it sought to remedy only past actions, not prohibit future conduct, with the goal of

pursuing a damages remedy against the State). A declaration now would do no more than fix liability, and no "anticipatory or preventative objective will be served." *Lister*, 249 N.W.2d at 308; *Putnam v. Time Warner Cable*, 649 N.W.2d 626, 640 (Wis. 2002) ("'The underlying philosophy of [declaratory judgments] is to enable controversies of a justiciable nature to be brought before the courts for settlement and determination prior to the time that a wrong has been threatened or committed.'") (quoting *Lister*, 240 N.W.2d at 624).

The pungency of this tactic is particularly noticeable here, where it appears Plaintiffs maintain damages claims in every claim except the sixth, ostensibly to avoid invocation of state sovereign immunity. While clever, the Court is not fooled; Plaintiffs impermissibly seek to fix Defendants' wrongdoing in the sixth count and then pivot toward a damages remedy in the other counts or in a later suit after pursuing the state notice of claims procedure. *See Montgomery v. Milwaukee County*, 886 N.W.2d 593, at *4 (Wis. Ct. App. 2016) (dismissing declaratory judgment action when "the 'wrong' has already occurred, and [the plaintiff] seeks monetary damages"); *PRN Assoc.*, 766 N.W.2d at 575. Additionally, the declarations Plaintiffs request would, as a matter of common sense, eventually morph into a damages claim, since they ask the Court to declare that DSA's fees were unlawfully exacted from students and that the PSA officials removed from office should not have been—thereby reinstating their right to compensation which they press in the other counts of the complaint. *See Wis. State Employees Union, AFSCME, AFL-CIO v. State, Dep't of Admin.*, 828 N.W.2d 593, at *5 (Wis. Ct. App. 2013) (finding that a claim for return of furlough days to employee was in essence a damages claim since it sought the provision of paid time off although it did not actually request money).

Plaintiffs' requested injunctive relief does not suggest a different result. While Plaintiffs claim an ongoing injury from the replacement of the PSA with the DSA, the actual wrongs they seek to remedy occurred well before they filed the complaint in this case. They are past wrongs, with purportedly continuing injuries. Moreover, it would defy credulity to permit a party to avoid sovereign immunity with such vague requests as "invalidation of all acts predicated upon or relying for their authority upon the results of" Defendants' campaign of violating Plaintiffs' rights under Section 36.09(5), and preliminary relief "to halt the ongoing creation of new harms predicated on such interference." (Docket #22 at 39). If Plaintiffs know what they mean by "all acts" or what "new harms" may occur, they have not told the Court. A bald request for prospective relief does not make the harm a present one without clear description of realistic, ongoing harm. *See Olson v. Town of Cottage Grove*, 727 N.W.2d 373, at *4 (Wis. Ct. App. 2006) ("The facts upon which a declaration of rights is premised should not be contingent, hypothetical or uncertain; they should possess a requisite degree of preciseness, certainty and imminence.") (citing *Putnam*, 649 N.W.2d at 640–41).

Finally, it is notable that Plaintiffs' claims for injunctive relief are all but moot, as most Plaintiffs are no longer UWM students. Furthermore, several school years have passed since the years relevant to this case, rendering specious the claim that the Court should now order retroactive adoption of whatever legislative items (not meaningfully described in the complaint) that the PSA tried unsuccessfully to pass. Likewise, the 2013–2014 school year is over, and the student government for that year cannot be unwound and reorganized with Plaintiffs' preferred officers—who again, seem to be involved in this case only to get the paychecks they were

denied by their removal from office. And even as to those Plaintiffs who are current UWM students who seek an injunction against the continued authority of the DSA, they are nowhere mentioned in the body of the complaint, the vast bulk of which concerns isolated instances of mistreatment against specific individuals who sought positions in the UWM student government. This suggests that the current students are involved in this case only as another layer of shrewd calculation designed to avoid an assertion of sovereign immunity.

In sum, then, the Court finds that in light of the broad reach of Wisconsin's sovereign immunity and the narrow scope and purpose of the exception for prospective declaratory and injunctive relief, Plaintiffs' sixth cause of action does not qualify under that exception. It is therefore barred by Wisconsin's assertion of immunity in this case.

### 3.3 Joinder and *George*

After excising Plaintiffs' sixth cause of action and the previously dismissed Defendants, it becomes clear that the case can no longer be maintained. Federal Rule of Civil Procedure 18 permits a plaintiff to bring in one lawsuit every claim he has against a single defendant. Fed. R. Civ. P. 18(a). However, to join multiple defendants in a single action, Rule 20 requires that the plaintiff assert at least one claim against all of them "arising out of the same transaction, occurrence, or series of transactions or occurrences" and that "any question of law or fact common to all defendants will arise in the action." *Id.* 20(a)(2). Working together, these two rules mean that "[u]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Consequently, "multiple claims against a single party are fine, but Claim A

against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *Id.*

Plaintiffs' complaint represents the very sort of "buckshot" complaint, raising every grumble about every bad actor Plaintiffs could think of, that *George* sought to forestall. More specifically, it violates Rules 18 and 20 insofar as it advances unrelated claims against multiple defendants for various discrete episodes occurring over a span of several years. Those claims implicate thirty-seven defendants and seven separate claims alleging violations of civil rights, conspiracy, claims under Wisconsin's public records law, claims of constructive discharge, claims of defamation and harassment, claims of violation of a novel duty of fair representation implied from Section 36.09(5), and claims regarding school disciplinary proceedings. While Plaintiffs are correct that the actual number of parties and claims a party can raise is not limited by the joinder rules, the only apparent topical commonality between the claims is that UWM officials allegedly committed bad acts against students.

There must be more tying each episode together, and those allegations are lacking here. For example, the first count alleges a civil rights claim by Laughland against Laliberte and Lovell (who has already been dismissed) arising from misconduct alleged to have occurred after the 2012 student government elections. No allegation connects this claim in any conceivable way to any other. What does Laughland's claim have to do with review of the 2013 student government election results (count two), Siddique and Scott's 2013 applications to the Board of Trustees (count three), Couto-Lain's treatment by UWM administrators during his service on that Board in 2013 (count four), the trumped-up charges of misconduct against Siddique and Scott (count five), or the failure to turn over records

(count seven)? To the Court, they appear to be separate claims between distinct parties arising at different times and from different conduct.

Plaintiffs offer only one explanation: the lynchpin for joinder is the sixth cause of action. Plaintiffs concede that while "two randomly picked claims might appear unrelated," the sixth count is "central" and forms a "common nexus" for all other claims. (Docket #29 at 5–9). Plaintiffs claim that the conspiracy of interference with student rights alleged in the sixth count binds all the alleged misconduct in this case together. Whether this is true as a matter of joinder is of no moment, as the Court has already found that the sixth cause of action cannot proceed. *See supra* Part 3.2. Plaintiffs' decision to put all their joinder eggs in the basket of the sixth cause of action dooms their case. The remaining claims must be dismissed for violation of Rules 18 and 20, as required by *George*.

4. **CONCLUSION**

This case was not difficult to decide. No one could mistake the obvious flaws in Plaintiffs' pleadings, thus the Court remains perplexed why the matter languished for over a year without a decision. In any event, the matter is now fully and finally resolved. Given four chances to plead viable claims—two in state court and two in this Court—there is absolutely no reason Plaintiffs should be afforded another opportunity at amendment. They have had their chances.

The Court acknowledges that the individual failings it has identified, other than the immunity issue with respect to the sixth count, normally result in dismissal without prejudice. Fed. R. Civ. P. 4(m) (dismissal for failure to effect service should be without prejudice); *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972) ("The proper remedy in case of misjoinder is to grant severance or dismissal to the improper party if it will not

prejudice any substantial right."). Yet the case's procedural history leads inexorably to the conclusion that it must be dismissed with prejudice despite the existence of otherwise technical pleading failures. *See Stanard v. Nygren*, 658 F.3d 792, 799 (7th Cir. 2011) (egregious pleading defects, considered collectively, can warrant dismissal with prejudice even if they could not standing alone).

The action was originally filed in Milwaukee County Circuit Court in May 2014. Defendants filed a motion to dismiss and, in response, Plaintiffs submitted an amended complaint which included federal civil rights claims. Defendants thereafter removed the case to this Court in January 2015 and moved to dismiss the first amended complaint. In September 2015, the Court granted the motion in part and permitted Plaintiffs to file a second amended complaint to cure some of the deficiencies it identified. In October 2015, Plaintiffs filed their second amended complaint. Defendants filed a motion to dismiss the second amended complaint in late October 2015, and in response, Plaintiffs sought and were granted leave to file a third amended complaint. The third amended complaint, which is the operative complaint now before the Court, was filed on December 1, 2015.

Under Federal Rule of Civil Procedure 15, courts have discretion to grant leave to amend a pleading where justice so requires. Fed. R. Civ. P. 15(a)(2). A court's "broad discretion to deny leave to amend" is normally best exercised "where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Important here is Plaintiffs' repeated failure to cure the rampant deficiencies in their

complaint despite the assistance of counsel and numerous second chances. Even if one concluded that, like vintage wine, the complaint slowly improved with age (and amendment), no defendant should be made to wait for over three years, including the time and expense required to brief three motions to dismiss, for the plaintiff to craft a viable pleading. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (finding that defendant suffered real prejudice by endless amendments and motion practice regarding the complaint). Moreover, Plaintiffs' blatant disregard for the Court's prior instructions—most pointedly, their choice to name defendants in the third amended complaint who had already been dismissed from the case for failure to effect service—gives the Court no confidence that errors once identified would not reemerge in later iterations of the complaint. *See Stanard*, 658 F.3d at 800 (failure to correct deficiencies identified by the court over the course of three complaints supported dismissal with prejudice).

Despite being given an incredible four attempts to craft a complaint which stated actionable claims, Plaintiffs and their counsel have failed each time. Facing a similar situation, the Seventh Circuit opined, "[t]he plaintiff's lawyer has had four bites at the apple. Enough is enough." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011); *see also U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (affirming dismissal with prejudice after three amendments). This Court is of like mind. The case will be dismissed with prejudice.

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss the third amended complaint (Docket #23) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21st day of June, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge