IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

MOHAMMAD SAMIR SIDDIQUE,

    Plaintiff
v.

Case No. 15-CV-1

DR. MICHAEL LALIBERTE,
DAVID STOCKTON, and
RICHARD R. THOMAS,

    Defendants.

### DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFF'S MOTION TO RECONSIDER JUDGMENT

### INTRODUCTION

On April 10, 2019, the Court issued an Order granting the defendants' motion for summary judgment. (Dkt. 95). The Court rejected the plaintiff's claim that the defendants engaged in retaliatory speech against the plaintiff, and the Court dismissed the plaintiff's claim that the defendants retaliated against him by not appointing him to the student Board of Trustees on qualified immunity grounds. The plaintiff has now moved the Court for reconsideration of the Order's holding with respect to the issue of the defendants' qualified immunity.[1] (Dkt. 98). For the reasons that follow, the plaintiff's motion for reconsideration of the Court's Order should be denied.

---

[1] As the Court noted, there is agreement that defendant Thomas's alleged liability was only attached to the plaintiff's claim that the defendants engaged in retaliatory speech, so the issue of qualified immunity is not relevant to defendant Thomas. (Dkt. 95, fn. 5).

I. THE COURT'S RULING DID NOT RELY ON BAD LAW.[2]

The plaintiff argues that the Court's ruling on qualified immunity relied on "bad law." (Dkt. 98, at 2). He asserts that the Court erroneously relied on a section of the relevant statute that was added to the statute after the date of the events that are the subject of the plaintiff's claim. The statute in question is Wis. Stat. § 36.09(5), which states:

> **(5) Students.** The students of each institution or campus subject to the responsibilities and powers of the board, the president, the chancellor, and the faculty shall have primary responsibility for advising the chancellor regarding the formulation and review of policies concerning student life, services, and interests. Students in consultation with the chancellor and subject to the final confirmation of the board shall have the responsibility for the disposition of those student fees which constitute substantial support for campus student activities. The students of each institution or campus shall have the right to organize themselves in a manner they determine and to select their representatives to participate in institutional governance.

In discussing the applicability of the above statute to the issue of qualified immunity, the Court referenced Wis. Stat. § 36.09(3m), which states:

> **(3m) Meaning of "subject to" in certain provisions.** In subs. (4) to (5), "subject to the responsibilities and powers" means subordinate to the responsibilities and powers.

The plaintiff notes that § 36.09(3m) was added to the statutes and became effective on July 15, 2014, while the events in question occurred in 2013. Therefore, he

---

[2] As an initial matter, the plaintiff's motion states that it is brought "pursuant to Federal Rule of Civil Procedure 49(e) and 50(b)(6)." (Dkt. 98, at 1). There is no Rule 49(e), so defendants assume the plaintiff meant to refer to Rule 59(e) (Motion to Alter or Amend a Judgment). Likewise, there is no Rule 50(b)(6), so defendants assume that the plaintiff meant to invoke Rule 60(b)(6) (Grounds for Relief from a Final Judgment, Order, or Proceeding.)

argues, it was error for the Court to invoke that section when interpreting the phrase "subject to" in § 36.09(5).

The Court's reliance on that provision was appropriate for the purposes of clarifying the meaning of the statute, as Chapter 990 ("Construction of Statutes") makes clear. Specifically, Wis. Stat. § 990.001(7) states, in part:

> **(7) Construction of revised statutes.** A revised statute is to be understood in the same sense as the original unless the change in language indicates a different meaning so clearly as to preclude judicial construction.

Under the above construction statute, the clarifying language of subs. (3m) does not change the substantive meaning of subs. (5). Rather, it merely clarifies it but does not indicate a different meaning. As such, the Court's reference to this provision when interpreting the meaning of the statute as it existed in 2013 was correct.

Plaintiff's contrary argument actually undercuts his assertion that the Court erred in granting summary judgment on the basis of qualified immunity. The doctrine of qualified immunity insulates government actors from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In other words, the doctrine protects public officials "who act in ways they reasonably believe to be lawful," and thus leaves "ample room for mistaken judgments." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (citations omitted). The issue is "whether the law was clear in relation to the specific facts confronting the public official when he acted." *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir. 1987). In this matter, the fact that the Legislature saw

fit to attempt to clarify the statute a year after the events in question is evidence that the law was not, in fact, "clearly established."

Moreover, when qualified immunity is raised as a defense, the burden is on the plaintiff to establish that the constitutional right allegedly violated is clearly established. *Snyder v. Nolen*, 380 F.3d 279, 290 (7th Cir. 2004). As the Seventh Circuit has stated:

> "'The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful.' ... Our conclusion is that the test for immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted." *Colaizzi v. Walker,* 812 F.2d 304, 308 (7th Cir. 1987) (quoting *Azeez v. Fairman,* 795 F.2d 1296, 1301 (7th Cir. 1986)) . . . Although we do not require cases involving the exact fact pattern at bar, case law in a closely analogous area is essential to permit us to conclude that the constitutional right was clearly established at the time of the alleged violation. *Lojuk,* 770 F.2d at 628; *Benson v. Allphin,* 786 F.2d 268, 276 (7th Cir. 1986).

*Conner v. Reinhard*, 847 F.2d 384, 388 (7th Cir. 1988).[3] The relevant inquiry, then, is whether a reasonable state official could have believed his or her act was constitutional "in light of clearly established law and the information [he or she] possessed" at the time of the official's action. *Penterman*, 211 Wis. 2d at 470 (internal cites omitted). A "sufficient consensus based on all relevant case law,

---

[3] *See also Penterman v. Wisconsin Elec. Power Co.*, 211 Wis. 2d 458, 470-472, 565 N.W.2d 521, 529 (1997): "The relevant inquiry is fact specific, and the plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on materially similar facts....[P]re-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violated federal law in the circumstances." (citing *Wright v. Butts,* 953 F.Supp. 1352, 1359-60 (M.D. Ala. 1996).

indicating that the officials' conduct was unlawful is required." *Landstrom v. Illinois Dept. of Children & Family Serv.,* 892 F.2d 670, 676 (7th Cir. 1990).

The plaintiff has not established that there was clearly established binding case law such as to put the defendants on notice that their conduct of barring the plaintiff's appointment to the Board of Trustees clearly violated the law. In support of his argument, the plaintiff relies on a non-precedential 1994 Dane County Circuit Court decision that concluded that "the term 'subject to' may not be defined as an equivalent as 'subordinate to.'"[4] In light of the fact that the above-referenced case is non-precedential, and given that the Legislature later added clarifying language to the statute, the plaintiff has failed to establish that there was clearly established case law by which a defendant would know that his act was unconstitutional at the time of the rejection of the plaintiff's application based on his enrollment status.[5]

Finally, even if one assumes *arguendo* that the defendants' rejection of the plaintiff's application was retaliatory, it should be noted that the plaintiff was (by his own admission) a central figure in the previous student government, whose elections were invalidated based on an independent commission's findings that, among other things, the election process was "inherently unfair" and that the election bylaws section "prohibits very little and provides scant direction to ensure a

---

[4] Dkt. 98, at 3, citing *Spoto, et al. v. Board of Regents, et al.*, Dane County Case No. 92-CV-5046, Decision and Order, June 6, 1994, at 15).

[5] Defendants also wish to note that the Court's order on summary judgment erroneously states that "Plaintiff admits that he was not enrolled at UWM in June 2013, but he was nevertheless registered as a student (i.e., he had paid the registration fee to reserve his place at the university)." (Dkt. 95, at 5). There is nothing in the record that states that he had, in fact, done so.

- 5 -
Case 2:15-cv-00001-JPS   Filed 05/29/19   Page 5 of 9   Document 103

fair election free from undue influence." (Dkt. 75-1, at 3-4). The plaintiff is mentioned several times in the report, including a reference to him as disrupting a public debate forum for student government candidates. (Dkt. 75-1, at 2). The plaintiff has pointed to no clearly established case law that stands for the proposition that the rejection of an applicant who was closely associated with a regime that was found to be engaging in unfair and corrupt election practices violates that person's constitutional rights.

The plaintiff's final argument that the defendants had no discretion to exclude him for arbitrary or retaliatory reasons misses the point of the Order's reasoning regarding qualified immunity standards. The Court cites the general rule that the State may not retaliate against a person based on their speech, but notes that there is not clearly established case law that stands for the proposition that a student has an unfettered right to participate in student government. As the Court states, "qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" (Dkt. 95, at 15) and it is not clear to the Court that the defendants' exercise of their power (as they understood it) under Wis. Stat. § 36.09(5) was a knowing violation of the law.

The Court should deny the plaintiff's motion for reconsideration of the Court's decision that dismissed the plaintiff's retaliation claim on qualified immunity grounds.

## II. THE PLAINTIFF DID NOT PROVIDE EVIDENCE THAT DEFENDANTS' REJECTION OF THE PLAINTIFF'S APPLICATION WAS IN RETALIATION FOR THE PLAINTIFF'S SPEECH.

In addition to affirming its decision on qualified immunity grounds, Defendants respectfully ask that the Court reconsider its conclusion that there are sufficient disputes of fact as to whether Plaintiff's rejected application was retaliatory." (Dkt. 95 at 9). It is undisputed that: (a) Stockton screened all applicants for the Board; (b) that the plaintiff was not an enrolled student at the time of his application; (c) that System Policy F50 included an enrollment requirement; and (d) that Stockton had only been in his position a few months and that his understanding was that under Policy F50 he was charged with confirming enrollment for eligibility purposes.

The Court's order states that "Plaintiff has provided some evidence from people familiar with the student government processes who attest that the enrollment requirement was not typically enforced for summertime student government participants." (Dkt. 95, at 9). Aside from the fact that the statements to that effect lacked any foundation as to how the declarants would know what was or wasn't enforced with respect to anyone but themselves, whether they had been enforced in the past is irrelevant to Stockton's actions. He had only been in his position for a few months at the time he screened the applicants for the Board of Trustees, and what is relevant is what his understanding was regarding enrollment and eligibility. There is no evidence in the record that contradicts defendant Stockton's testimony as to what he understood his role to be in that regard.

The Court's order also raises questions as to defendant Stockton's claim that the enrollment criteria was applied to all applicants, noting that "one affiant who was appointed to the Board of Trustees believes that he *may not have been enrolled* when his application was accepted." (Dkt. 95, at 10; emphasis added). This does not, however, constitute evidence as to defendant Stockton's actions, as it is only speculative and lacks any documentary support.

The plaintiff's entire argument in support of his claim that his non-appointment to the BOT was based on retaliation for his criticisms of the UWM administration is based on conjecture and speculation. In response to the defendants' motion to dismiss, the Court allowed the plaintiff to proceed with his free speech retaliation claim for the purpose of allowing the plaintiff an opportunity to develop a factual record to support his allegations.

At the summary judgment stage, however, (which has been defined as the "put up or shut up phase" of litigation, *see Springer v. Durflinger*, 518 F.3d 479 (2008)), the plaintiff did not provide any evidence to support the conjecture and speculation that underlie his claims. In fact, as the plaintiff stated in his deposition, his allegation as to why he was non-appointed was based on a "hunch." (Dkt. 71-1: 9-11; Siddique Depo., p. 29-35), which cannot survive a motion for summary judgment. "Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors, and '[d]iscrimination law would be unmanageable if disgruntled employees ... could defeat summary judgment by

affidavits speculating about the defendant's motives." *Springer*, 518 F.3d at 484, quoting *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994).

The plaintiff failed to produce evidence that defendant Stockton's rejection of his application was for any reason other than the plaintiff's failure to be enrolled at the time he applied. For the reasons stated herein and previously, the defendants' motion for summary judgment should be granted on these grounds as well as on the grounds of qualified immunity, and the plaintiff's motion for reconsideration should be denied.

Respectfully submitted this 29th day of May 2019.

       JOSHUA L. KAUL
       Attorney General

       /s/ Christopher J. Blythe
       CHRISTOPHER J. BLYTHE
       Assistant Attorney General
       State Bar #1026147
       Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0180 (Phone)
(608) 267-8906 (Fax)
blythecj@doj.state.wi.us